IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE DAVONN PERISON, | ) | CASE NO.1:20-CV-00580 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**Introduction**

Before me[1] is an action under 42 U.S.C. § 405(g) by Eugene Davon Perison seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Perison's 2017 applications for Child's Insurance Benefits and Supplemental Security Income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to the initial order of the original magistrate judge,[5] as well as my

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge James R. Knepp II. ECF No. 22.
[2] ECF No. 1.
[3] ECF No. 10.
[4] ECF No. 11.
[5] ECF No. 7. The initial order was issued by Judge Knepp while a Magistrate Judge prior to his appointment as a District Judge.

1

supplemental order,[6] the parties have filed briefs[7] and supplemental fact sheets,[8] as well as participated in a telephonic oral argument.[9]

For the following reasons the decision of the Commissioner will be reversed and the matter remanded for further proceedings.

## The ALJ's Decision

After recognizing that Perison had not yet attained the age of 22 as of the alleged onset date of October 1, 1992 and so had no substantial gainful activity to record,[10] the ALJ found that Perison had the following severe impairments: post-traumatic stress disorder, borderline intellectual functioning/learning disorder, history of cannabis use disorder.[11] In making this determination, the ALJ noted that Perison had sustained a gunshot wound in December 2016 that required hospitalization but subsequent medical evidence showed that this incident resulted in no residual functional limitations.[12]

The ALJ then considered whether any of the named impairments met or medically equaled a listing.[13] In that regard, the ALJ initially found that Perison had only moderate limitations in the areas of: (1) understanding, remembering and applying information; (2)

---

[6] ECF No. 18.
[7] ECF Nos. 14 (Perison), 16 (Commissioner), 17 (Perison reply)
[8] ECF Nos. 19 (Perison), 20 (Commissioner).
[9] ECF No.
[10] Tr. at 17.
[11] *Id*.
[12] *Id*. at 18.
[13] *Id*. at 18-20.

2

interacting with others; (3) maintaining concentration, persistence and pace; or (4) adapting or managing oneself.[14] The ALJ noted, without further elaboration, that Perison's "extensive history of cannabis use" did cause "some limitation" of his ability to maintain concentration, persistence and pace.[15]

At a later point in that same vein the ALJ also noted that:

> Cannabis use continues to be a factor in this case, and while the extent of its impact on his cognitive functioning is not defined by the record, Dr. Pickholtz [a one-time examining psychologist whose report is from October 2010][16] noted it is likely affecting his memory and his ability to manage funds independently. School records also noted his substance use as having an impact on behavior and performance in that setting. Although drug use does not result in a disabling limitation in this case, the undersigned has considered its impact on [Perison's] mental functioning in combination with his other impairments, and notes that the record suggests it has exacerbated his symptoms to some extent.[17]

From the evidence, the ALJ determined that Perison has the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following limitations:

> The claimant can perform simple, routine and repetitive tasks. The claimant can make simple work-related decisions. The claimant is limited to hearing and understanding simple oral instructions and limited to communicating simple information. The claimant is limited to a static work environment and can tolerate few changes in a routine work setting. When those changes occur, they need to take place gradually and occur infrequently. The claimant is limited to occasional

---

[14] *Id*. at 18-19.
[15] *Id*. at 19.
[16] *Id*. at 433-36.
[17] *Id*. at 21-22.

3

interaction with a small group of co-workers, where the contact is casual in nature. The claimant is limited to occasional, superficial interaction with the public.[18]

In arriving at this RFC the ALJ stated that no treating source had offered a functional opinion and that the RFC was "consistent" with the "findings of both consultative examining psychologists and the reviewing State agency psychological consultant."[19] But after making that general statement, the ALJ discussed only the findings of State agency psychological consultant Irma Johnston, Psy.D.[20] In fact, there was a second State agency reviewing psychologist, Aracelis Rivera, Psy.D., whose report[21] was not included in the ALJ's sentence referring to the opinion evidence in the record and was ignored by the ALJ in the following brief discussion that mentioned only Dr. Johnston.

> After observing that Pierson had no past relevant work and has limited education, the ALJ further observed, consistent with the RFC, that Pierson's ability to perform the full range of work at all exertional levels was compromised by non-exertional limitations.[22] Thus, a vocational expert (VE) was called to testify as to whether any jobs exist in the national economy for an individual with Pierson's age, education, work experience and RFC.[23] The VE testified that Pierson would be able to do three jobs at the medium, unskilled level: cleaner, laundry worker and dishwasher.[24] Pierson was then declared not disabled.[25]

---

[18] *Id*. at 20.
[19] *Id*. at 22.
[20] *Id*.
[21] *Id*. at 86-88.
[22] *Id*. at 23.
[23] *Id*.
[24] *Id*.
[25] *Id*.

4

## Issue on Judicial Review

Pierson presents as a single issue for judicial review the question of whether the Commissioner's RFC finding is contradicted by the State agency psychological reports that the ALJ purportedly relied upon, thus making the final decision not supported by substantial evidence.[26]

The issue as stated contains several elements. **First,** Pierson points out, as noted above, that there were two State agency psychological experts – Dr. Rivera, who reviewed the evidence at the initial level and concluded that Pierson was limited to "1-2 step tasks without strict time limits or quotas," and Dr. Johnston, on reconsideration, who opined that Pierson was limited to "1-3 step tasks."[27] **Next**, Pierson observes that all three jobs identified by the VE involve more than two steps and if a worker under the current RFC were limited to only two step jobs then no jobs would be available.[28]

## Pierson's Arguments

Essentially, Pierson contends that the ALJ began his erroneous analysis by failing to discuss at all Dr. Rivera's limitation to jobs requiring only one or two steps – a failure highlighted by the ALJ reference to State agency opinions in the singular, not plural, as noted above – and compounded by interpreting Dr. Johnston's limitation of 1-3 step tasks as meaning a limitation to "a range of simple, routine, low stress tasks that did not involve

---

[26] ECF No. 14 at 1.
[27] *Id*. at 11-13 (quoting record).
[28] *Id*. at 9.

5

time demands and did not involve more than superficial interaction with others."[29] Thus, despite claiming in the ALJ opinion that the RFC was supported by the opinions of State agency sources, particularly Dr. Johnston, who was explicitly cited, Pierson observes that the RFC contained no restriction to 1-3 step tasks, as Dr. Johnston opined, nor did the opinion show what the ALJ made of Dr. Rivera's opinion, which was not specifically discussed.[30]

In such a posture, Pierson argues, the reviewing court is left to guess at why no step limitation was included in the RFC when the ALJ claimed it was supported the State agency opinions and why Dr. Rivera's opinion was not mentioned. This failure to explain and articulate prevents meaningful judicial review. As such, Pierson seeks a remand.[31]

Further, Pierson points out that the ALJ also failed to follow SSR 13-2p in addressing his substance abuse. Simply put, the regulation requires that the ALJ follow a three-step process: (1) determine whether the claimant has a drug or alcohol addiction (DAA); (2) if so, then determine if the claimant is disabled from all his impairments, including DAA; (3) then decide if: (a) the claimant would still be disabled absent the DAA, in which case he is entitled to benefits; (b) the claimant would not be disabled absent the DAA, in which case he would not be entitled to benefits; or (c) it is not clear one way or the other, in which case the claimant is entitled to benefits.[32]

---

[29] Tr. at 22.
[30] ECF No. 14 at 14.
[31] *Id*. at 15.
[32] *Id*.at

6

Here, Pierson contends, no proper analysis under SSR 13-2p was ever done on the record, with the ALJ merely "insinuating" the effects of the DAA without ever articulating them or affording him the "benefit of the doubt" if it was unclear that absent the DAA he would still be disabled.[33]

## Analysis

This matter is to be decided under the well-known substantial evidence standard, which need not be re-stated here.

Under that standard, as is well-established, if the ALJ accepts the limitations set forth in the medical record, then he must include those limitations in the RFC or clearly explain why not.[34] Further, an RFC and the resulting hypothetical to the VE must be based on the relevant evidence and address all the vocational effects of the claimant's recognized impairments.[35] If the ALJ fails to do so, the resulting decision is not supported by substantial evidence.[36] Finally, the Commissioner's own regulations require that an ALJ consider every medical opinion it receives and set forth a valid reason for rejecting any limitations included therein.[37]

Here, the ALJ's complete failure to address the opinion of Dr. Rivera and to explain how even the opinion of Dr. Johnston regarding 1-3 step tasks equates to a generic

---

[33] *Id.* at 16-17.
[34] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).
[35] *Smith v. Comm'r of Soc. Sec.*, 482 F. 3d 873, 877 (6th Cir. 2007).
[36] *Id.*
[37] 20 C.F.R. § 404.1527(a); *Wilson*, 378 F.3d at 544.

description of simple, routine and low stress tasks makes the ALJ's reasoning in support of the RFC not subject to meaningful judicial review and the final decision not supported by substantial evidence. The Commissioner's subsequent rationale for these decisions, presented here, is not a substitute for the ALJ articulating his reasoning and analysis in the opinion.[38]

In addition, while the matter must be remanded for the reasons stated above, the failure to properly follow the mandate of SSR 13-2p must be addressed on remand. The unspecific, conclusory statements by the ALJ that "although drug abuse does not result in disabling limitation in this case" and that "the undersigned has considered its impact on [claimant's] mental functioning … [and that] it has exacerbated his symptoms to some extent" does not remotely comply with the mandate of the regulations.

### Conclusion

Therefore, the reasons stated above, the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 13, 2021                                     s/William H. Baughman Jr.
                                                              United States Magistrate Judge

---

[38] *Roche v. Berryhill*, 2017 WL 6512236, at *23 (N.D. Ohio Dec. 12, 2017); R&R adopted, *Roche v. Berryhill*, 2017 WL 6502614 (N.D. Ohio Dec. 19, 2017).